David S. Gingras, CSB #218793
**Gingras Law Office, PLLC**
4072 E Mountain Vista Dr.
Phoenix, AZ 85048
Tel.: (480) 639-4996
Fax: (480) 668-3623
David.Gingras@webmail.azbar.org

Maria Crimi Speth, (Admitted *Pro Hac Vice*)
**Jaburg & Wilk, P.C.**
3200 N. Central Ave., Suite 2000
Phoenix, AZ 85012
Tel: (602) 248-1000
Fax: (602) 248-0522
mcs@jaburgwilk.com

Paul S. Berra, CSB #186675
**Law Offices of Paul S. Berra**
1404 3rd Street Promenade, Suite 205
Santa Monica, CA 90401
Tel: (310) 394-9700
Fax: (310) 394-9755
Paul@Berra.org

Attorneys for Defendants
Xcentric Ventures, LLC and
Edward Magedson

**GINGRAS LAW OFFICE, PLLC**
**4072 EAST MOUNTAIN VISTA DRIVE**
**PHOENIX, ARIZONA 85048**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASIA ECONOMIC INSTITUTE, LLC,** *et al.*, | Case No: 2:10-cv-01360-RSWL-PJW |
| **Plaintiffs,** | **NOTICE OF MOTION AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| **vs.** | |
| **XCENTRIC VENTURES, LLC,** *et al.* | Hearing Date:  June 28, 2010 |
| **Defendants.** | Time:          1:30 PM |
| | Courtroom: 6 (Hon. Stephen Wilson) |

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................2

II.    SUMMARY OF UNDISPUTED MATERIAL FACTS .......................................2

     A.    Facts Relating to CDA Immunity ................................................9

III.   ARGUMENT ................................................................12

     A.    Plaintiffs Have Lied About Being Extorted..............................12

     B.    AEI Lacks RICO Standing................................................14

         1.    Plaintiffs Have No Evidence Of RICO Damages ....................15

         2.    Reputational Damages Are Not Recoverable Under RICO..........17

     C.    Defendants Are Immune Under The Communications Decency Act........19

     D.    Plaintiffs Have No Evidence To Support Their Non-RICO Claims..........23

         1.    Plaintiffs Are Not Entitled To Restitution/Injunctive Relief Under Cal. Bus. & Prof. Code § 17200................................................23

         2.    No Evidence Exists That Defendants Intentionally Interfered With Plaintiffs' Economic Relations ................................................24

         3.    No Evidence Of A Conspiracy Exists.........................................25

IV.   CONCLUSION ................................................................25

i

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1

**TABLE OF AUTHORITIES**

2

3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) .. 14

4

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 126 S.Ct. 1991,............................................... 18

5

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009)................................................................ 21

6

*Bennett v. Centerpoint Bank*, 761 F.Supp. 908 (D.N.H.), *aff'd without op.*, 953 F.2d 634 (1st Cir.
    1991) ........................................................................................................................................ 18

7

8

*Bradstreet v. Wong*, 161 Cal.App.4th 1440, 75 Cal.Rptr.3d 253 (1st DCA 2008) ....................... 23

9

*Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008)....................................... 15

10

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001)) ................................................................... 23

11

*Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005)............................................................................... 16

12

*Doe v. MySpace, Inc.*, 474 F.Supp.2d 843 (W.D.Tex. 2007) ...................................................... 22

13

*Farrakhan v. Gregoire*, 590 F.3d 989 (9th Cir. 2010)................................................................. 23

14

*Fireman's Fund Ins. Co. v. Stites*, 258 F.3d 1016 (9th Cir. 2001) ................................................ 16

15

*Forsyth v. Humana, Inc.,* 114 F.3d 1467 (9th Cir. 1997), *aff'd. on other grounds*, *Humana, Inc. v.
    Forsyth*, 525 U.S. 299, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999) .............................................. 17

16

17

*Galen v. County of Los Angeles*, 477 F.3d 652 (9th Cir. 2007)................................................... 14

18

*Gentry v. eBay, Inc.*, 99 Cal.App.4th 816, 121 Cal.Rptr.2d 703 (4 DCA 2002) ........................... 24

*Genty v. Resolution Trust Corp.*, 937 F.2d 899 (3rd Cir. 1991) ................................................... 19

19

*Gibson v. Craigslist, Inc.*, 2009 WL 1704355 (S.D.N.Y. June 15, 2009) ..................................... 22

20

*Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 2007 WL 2949002 (D.Ariz. 2007)................ 21

21

*Goddard v. Google, Inc.*, 640 F.Supp.2d 1193 (N.D.Cal. 2009) .................................................. 22

22

*Grogan v. Platt*, 835 F.2d 844 (11th Cir. 1988) ......................................................................... 18

23

*GW Equity, LLC v. Xcentric Ventures, LLC*, 2009 WL 62173 (N.D.Tex. 2009) ........................ 20

24

*Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384 (1984), *aff'd*, 473
    U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437) .............................................................................. 16

25

26

*Harris v. Coweta County*, 2003 WL 25419527 (N.D.Ga. Sept. 23, 2003)................................... 13

27

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).... 15

28

*Hy Cite Corp. v. Badbusinessbureau.com, LLC*, 418 F.Supp.2d 1142 (D.Ariz. 2005)............... 20

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

ii

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Intellectual Art Multimedia, Inc. v. Milewski*, 2009 WL 2915273 (N.Y.Sup. Sept. 11, 2009) .... 20

*JM Martinac Shipbuilding Corp. v. Washington*, 2010 WL 325950 (9th Cir. Jan. 29, 2010)....... 16

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 131 Cal.Rptr.2d 29, 63 P.3d 937
(2003)........................................................................................................................................ 24

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099 (9th Cir. 2000) .............................. 23

*Padilla Rodriguez v. Llorens Quiñones*, 813 F.Supp. 924 (D.Puerto Rico 1993) ........................ 17

*Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769 (2007) ................................................................. 13

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) ......... 15, 16

*Whitney Information Network, Inc. v Xcentric Ventures, LLC*, 2008 WL 450095 (M.D.Fla.
2008) ..................................................................................................................................... 20

*Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163 (3rd Cir. 1987)........................................... 18

## Statutes

18 U.S.C. § 1962 ......................................................................................................................... 15

Cal. Bus. & Prof. Code § 17200 .................................................................................................. 23

Communications Decency Act, 47 U.S.C. § 230(c)(1).................................................................. 10

18 U.S.C. § 1962(d) ..................................................................................................................... 24

## Rules

Fed. R. Civ. P.12(b)(6)................................................................................................................. 20

Fed. R. Civ. P. 56 ..................................................................................................................... 1, 20

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2       NOTICE IS HEREBY GIVEN that on June 28, 2010 at 1:30 PM or as soon

3  thereafter as counsel may be heard in Department 6 of the above-entitled court located at

4  312 North Spring Street Los Angeles, CA 90012, Defendants XCENTRIC VENTURES,

5  LLC ("Xcentric") and EDWARD MAGEDSON ("Magedson"; collectively

6  "Defendants") will move the Court for an order granting summary judgment in their

7  favor as to all claims in this case pursuant to Fed. R. Civ. P. 56.

8       The motion will be based on this Notice, the accompanying Memorandum of

9  Points and Authorities, all pleadings and records on file herein, and upon such other and

10 further oral and documentary evidence as may be presented prior to or at the time of the

11 hearing.

12       This motion is made following the conference of counsel pursuant to L.R. 7-3

13 which took place on April 28, 2010.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs' case is a fraud upon the Court.  Plaintiffs have come before this court claiming to be victims of criminal wrongdoing (extortion) committed by Defendants, but in fact, the opposite is true.  The only crime present here is the blatant perjury committed by Plaintiffs Raymond Mobrez and his wife, Iliana Llaneras.

Plaintiffs claim to have been the victims of extortion because after they discovered allegedly false statements about them on the Ripoff Report website, they contacted Defendants, asked for these statements to be removed, and were confronted with a demand for a payment of $5,000 plus a monthly fee to make the defamation disappear.  However, the undisputed evidence shows that this allegation is a deliberate lie.

Plaintiffs claim the extortion occurred during a series of phone calls made by Plaintiff Raymond Mobrez to Defendant Ed Magedson in April and May 2009.  To support this story, Mr. Mobrez's wife, Plaintiff Iliana Llaneras claimed in her sworn declaration that she was secretly eavesdropping on most of these calls, and she claims to have heard Ed Magedson demand $5,000 from Mr. Mobrez.  These claims were also supported by handwritten notes and phone bills showing the date/time of each call.

Unfortunately for Plaintiffs, all telephone calls to Defendants were monitored and recorded by a service similar to that used by large corporations for quality assurance.  These recordings prove the truth beyond any and all doubt—Mr. Mobrez and Ms. Llaneras have fabricated their allegations in this case in their entirety.  Not one word of their story is true.  Their entire lawsuit is a sham and a fraud upon this court.

The undisputed evidence shows that Mr. Mobrez and Ms. Llaneras were never asked for money; they have simply concocted this false allegation from thin air.   The undisputed evidence shows that Mr. Mobrez and Ms. Llaneras have also lied about every single material aspect of this case.  Separate from that issue, Plaintiffs also face many incurable legal defects in their case.  Summary judgment should thus be entered in favor of Defendants as to all claims in this matter along with such other relief as may be proper.

2

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

CV10-01360 SVW

## II.    SUMMARY OF UNDISPUTED MATERIAL FACTS

The material facts of this case are lengthy but undisputed.  Defendant XCENTRIC VENTURES, LLC ("Xcentric") operates the website www.RipoffReport.com. Defendants' Separate Statement of Material Facts ("DSOF") ¶ 1.  Defendant EDWARD MAGEDSON ("Mr. Magedson") is the manager of Xcentric and the founder and "ED"itor of the Ripoff Report site which he started in 1998.  DOSF ¶ 2.

Plaintiffs RAYMOND MOBREZ ("Mr. Mobrez") and his wife ILIANA LLANERAS ("Ms. Llaneras") are the principals of ASIA ECONOMIC INSTITUTE, LLC ("AEI").  DOSF ¶ 3.   AEI was formed as a California LLC on February 7, 2007. DOSF ¶ 4.   According to Mr. Mobrez, before it became an LLC in 2007, AEI existed as an unincorporated entity of some nature for approximately six years.  DOSF ¶ 5.

AEI's business was intended to focus on producing "seminars" of some type. DOSF ¶ 6.  At its peak, AEI employed approximately 27 people.  DOSF ¶ 7.  However, during its nine years in operation, AEI never actually produced any seminars nor did it even attempt to do so.   DOSF ¶ 8.   During its nine years in operation, AEI's total revenues were $0 and its total profits were $0.   DOSF ¶ 9.   AEI ceased all business operations (to the extent it ever had any) in June 2009.   DOSF ¶ 10.

According to Mr. Mobrez, AEI's inability to succeed was the result of only one thing—a series of negative comments which appeared on the Ripoff Report website. DOSF ¶ 11.  The first report was posted on January 28, 2009.   DOSF ¶ 12.  Among other things, the first report (#417493) states that AEI may actually be a "money laundering operation".  DSOF ¶ 13. Subsequent postings appeared on the Ripoff Report on February 3, 2009 and June 1, 2009.  DOSF ¶¶ 14, 15.  After AEI ceased operations in June 2009, three more posts were made to the Ripoff Report in October 9, 2009, February 3, 2010, and February 19, 2010.   DOSF ¶¶ 16–19.   Negative postings about Mr. Mobrez were also made on other websites, including two on Mr. Mobrez's own websites.  DOSF ¶ 20. Mr. Mobrez first attempted to address these posts by sending an email to Ripoff Report on February 15, 2009.  DOSF ¶ 21.   He received no response. DOSF ¶ 22.

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

3

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1    Several months later, Mr. Mobrez again tried to contact the Ripoff Report, this

2    time by phone.  DOSF ¶ 23.  As reflected in his own telephone records, on April 27,

3    2009, Mr. Mobrez placed three separate calls to the main phone number listed on the

4    Ripoff Report website; (602) 359-4357.  DOSF ¶ 24.  According to these phone bills, the

5    first call (Call #1) lasted 3.5 minutes, the second call (Call #2) was 1.0 minute, and the

6    third call (Call #3) was 2.9 minutes.  DOSF ¶ 25.

7    In his declaration filed in this matter on May 3, 2010, Mr. Mobrez testified that

8    during Call #1 to the Ripoff Report, he spoke to a man who identified himself as the

9    "ED"itor.  DOSF ¶ 26.  Mr. Mobrez testified that "[t]he speaker immediately inquired

10   into the size and profitability of my business."  DOSF ¶ 27.   Mr. Mobrez also testified

11   that the speaker asked "whether my company was internationally based, the size of the

12   company, and how we were making money."  DOSF ¶ 28.  Finally, Mr. Mobrez testified

13   that the speaker "boasted that Ripoff Report was at the top of all the search engines."

14   DOSF ¶ 29.   The call was disconnected immediately thereafter.  DOSF ¶ 30.

15   Mr. Mobrez testified that he called back two other times on April 27, 2009 and

16   had two other conversations (Calls #2 and #3) with the same person.  DOSF ¶ 31.   In

17   these brief conversations, Mr. Mobrez claimed that the speaker asked if he (Mr. Mobrez)

18   had heard about the site's Corporate Advocacy Program.  DOSF ¶ 32.  After Mr. Mobrez

19   responded that he was not aware of the program, he testified that the speaker directed him

20   to more information about the program online and instructed him to complete an

21   application form for the program.  DOSF ¶ 33.  Mr. Mobrez followed up on these calls by

22   sending an email to the Ripoff Report on April 28, 2009.  DOSF ¶ 34.  As before, he

23   never received any response from Defendants.  DOSF ¶ 35.

24   About a week later, on May 5, 2009, Mr. Mobrez called the Ripoff Report again

25   (Call #4) and reached a person who identified himself as "Ed Magedson".  DOSF ¶ 36.

26   During this conversation, Mr. Mobrez claimed that Mr. Magedson discussed the CAP

27   program, explained that Ripoff Report "has immunity under the law and therefore could

28   not be sued[]" and thus "it was best to just go with the [CAP] program." DOSF ¶ 37.

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

4

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1    After Mr. Mobrez's first conversation with Mr. Magedson on May 5, 2009, Mr.

2 Magedson sent a lengthy email to Mr. Mobrez which is a standard form that Mr.

3 Magedson sends to anyone who contacts the site asking about how to remove or respond

4 to reports.   DOSF ¶ 38.  The email contained no threats, did not ask for money, and

5 explained that Ripoff Report allows anyone to post responses to complaints for free.

6 DOSF ¶ 39.

7    After receiving this email, Mr. Mobrez called Mr. Magedson back on the

8 afternoon of May 5, 2009 (Call #5).   DOSF ¶ 40.  During this call, Mr. Mobrez and Ms.

9 Llaneras both claim that Mr. Magedson demanded a payment of "at least 'five grand'

10 [$5,000] plus a monthly maintenance fee of a couple hundred dollars" to enroll Mr.

11 Mobrez in the Corporate Advocacy Program.  DOSF ¶ 41.  Mr. Mobrez also claimed that

12 Mr. Magedson told him during this call that the amount of money charged would be

13 based on the amount of profit earned by the company, so "the more money a company

14 made, the more they would be charged."  DOSF ¶ 42.

15    A week later, on May 12, 2009, Mr. Mobrez claimed that he spoke to Mr.

16 Magedson by phone again (Call #7).[1]   During this call, which was the last one between

17 the parties, Mr. Mobrez claims that he asked Mr. Magedson what he would receive if he

18 paid the fees to participate in the CAP program.  DOSF ¶ 43.  In response, Mr. Mobrez

19 claims that Mr. Magedson told him that once Mr. Mobrez completed the CAP application

20 form and entered the program, "all the negative goes away and you see the positive."

21 DOSF ¶ 44.  Again, Ms. Llaneras claims she overheard this discussion.  DOSF ¶ 45.

22    Mr. Mobrez never completed the CAP application form and never paid anything to

23 Defendants.   DOSF ¶ 46.   Instead, on the last day before the statute of limitations

24 expired, Mr. Mobrez and Ms. Llaneras filed this lawsuit alleging, *inter alia*, extortion and

25 RICO/racketeering based on the demand for $5,000 made during these calls.

26 ─────────────

27 [1]  As explained herein, the call on May 12 referenced in this sentence as "Call #7" is
actually the <u>sixth</u> call described in Mr. Mobrez's declaration.  However, the evidence

28 establishes that this call was the seventh in a series of seven calls.   For that reason and
for the purposes of clarity and continuity, the May 12 call will be referred to as "Call #7".

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

5

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1   As explained herein, every material fact comprising Plaintiffs' extortion claim is a

2   lie. This is demonstrated by a series of audio recordings that Xcentric's phone system

3   automatically made of each call from Mr. Mobrez to Mr. Magedson. In short, every

4   discussion between Mr. Mobrez and Mr. Magedson was recorded and these recordings

5   show the unvarnished truth—that Mr. Mobrez and Ms. Llaneras have perjured

6   themselves and have manufactured their extortion claims from whole cloth.

7   The *real* truth is as follows. In April and May 2009, Mr. Mobrez called Mr.

8   Magedson a total of seven times. DOSF ¶ 47. Mr. Magedson never called Mr. Mobrez.

9   DOSF ¶ 48.   Table 1 below reflects the date, time, and duration of every call according

10  to telephone bills produced by Mr. Mobrez.[2] DOSF ¶ 49.

| TABLE 1—ALL CALLS PER PHONE BILLS | | | | |
|-----|------|------------|--------------|--------------|
| Call # | Date | Start Time | Call From # | Length (Min.) |
| 1 | 4/27/2009 | 3:21 PM | (310) 806-3000 | 3.5 |
| 2 | 4/27/2009 | 3:27 PM | (310) 806-3000 | 1.0 |
| 3 | 4/27/2009 | 3:28 PM | (310) 806-3000 | 2.9 |
| 4 | 5/5/2009 | 11:28 AM | (310) 806-3000 | 2.6 |
| 5 | 5/5/2009 | 1:05 PM | (310) 806-3000 | 2.2 |
| 6 | 5/9/2009 | 1:36 PM (est)[2] | (310) 801-5161 | 3.5 (est)[2] |
| 7 | 5/12/2009 | 2:46 PM | (310) 806-3000 | 16.5 |

20  With the exception of Call #2, all of these calls were automatically recorded for

21  Xcentric by a third party service. DOSF ¶ 50. Apparently, Call #2 was not recorded

22  because when a person calls Xcentric's main telephone number, they are required to

23  navigate through a series of menus before they reach Mr. Magedson. DOSF ¶ 51.

---

[2] The "start time" for each call is based on telephone bills that Mr. Mobrez produced pursuant to a deposition subpoena *duces tecum*. Although the subpoena demanded that he produce telephone records from all calls made to Defendants, Mr. Mobrez produced only his business telephone records; he did not produce any of his cell phone bills. Because Call #6 (which was recorded) was made from Mr. Mobrez's cell phone, the actual start time of this call and the length have been estimated based on the total running time of the recording (1:36) and the ending time of the recording (1:38 PM).

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

CV10-01360 SVW

Completing this process takes between one minute and two minutes on average, and the recording process does not begin until the caller is actually connected to Mr. Magedson. DOSF ¶ 52. Because Call #2 lasted only 1.0 minute according to Mr. Mobrez's phone bill, it appears that this call was not successfully connected, dropped, or Mr. Mobrez simply hung up before he reached Mr. Magedson. For that reason and as confirmed by a search of Xcentric's business records which revealed no recording of this call, Call #2 was not recorded because Mr. Mobrez never spoke to Mr. Magedson during this call. DOSF ¶ 53. This point is not significant, however, because Mr. Mobrez does not allege that any threats or demands for money occurred during the 1.0 minute duration of Call #2. DOSF ¶ 54.

Excluding Call #2, all of the other calls were recorded. A summary of the dates, ending times, and caller id information captured by Xcentric's phone system is reflected in Table 2 below. DOSF ¶ 55. The right-hand column of Table 2 cross-references these recordings with the description of each call as set forth in the May 3, 2010 Declaration of Mr. Mobrez which is attached as **Exhibit 19** to the Declaration of David Gingras filed wherewith. A CD of these calls is attached as **Exhibit 25** to Mr. Gingras' declaration.

| TABLE 2—RECORDINGS OF CALLS | | | | | |
|---|---|---|---|---|---|
| Call # | Date | End Time | Call From # | Length Min:Sec | Described in Mobrez Decl. ¶ |
| 1 | 4/27/2009 | 3:25 PM | (310) 806-3000 | 1:35 | 6 |
| 2 | 4/27/2009 | Not recorded | N/A | N/A | 7 |
| 3 | 4/27/2009 | 3:32 PM | (310) 806-3000 | 1:20 | 8 |
| 4 | 5/5/2009 | 11:33 AM | (310) 806-3000 | 0:51 | 10 |
| 5 | 5/5/2009 | 1:10 PM | (310) 806-3000 | 0:35 | 13 |
| 6 | 5/9/2009 | 1:38 PM | (310) 801-5161 | 1:36 | None[3] |
| 7 | 5/12/2009 | 3:05 PM | (310) 806-3000 | 14:45 | 14 |

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

---

[3] As explained in note 2, *supra*, Call #6 was made from Mr. Mobrez's cell phone. Because Mr. Mobrez apparently created his May 3, 2010 declaration based on a review of his office phone bills rather than his personal cell phone, his declaration does not contain any discussion of this call (which was a voicemail left on Xcentric's phone system).

7

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Comparing the transcript of each recording with a description of each call from Mr. Mobrez's declaration demonstrates a simple truth—Mr. Mobrez and Ms. Llaneras have lied about every material aspect of this case.  For example, in his May 3, 2010 declaration, Mr. Mobrez described Call #1 as follows:

| **Plaintiffs' Version of <u>Call #1</u>**<br>**Per ¶ 6 of May 3, 2010 Mobrez Declaration** |
|---|
| ¶ 6.  On April 27, 2009, I contacted the Ripoff Report office using the telephone number listed on its Web site [602-359-4357].  I was taken through a series of voice prompts which eventually led me to someone who identified himself as the "ED"itor.  The speaker immediately inquired into the size and profitability of my business.  Based on my recollection, the speaker asked, among other things, whether my company was internationally based, the size of my company, and how we were making money.  I responded that AEI is an American company that has been shut down by the accusations posted on his Web site.  Later in our conversation, he boasted that Ripoff Report was at the top of all the search engines.  The call was disconnected immediately thereafter. |

As reflected in the recording and transcript of Call #1, DSOF ¶ 56, the actual discussion that took place bears no resemblance whatsoever to Mr. Mobrez's description of the call

| | |
|---|---|
| Ed Magedson: | What's the -- |
| Mr. Mobrez: | This is Raymond.  I am at the Asia Economic Institute. |
| Mr. Magedson: | The what? |
| Mr. Mobrez: | Asia Economic Institute. |
| Mr. Magedson: | I can't understand a word you're saying.  What are you saying? |
| Mr. Mobrez: | I apologize. [Slowly] Asia Economic Institute. |
| Mr. Magedson: | [Slowly] Asia Economic Institute? |
| Mr. Mobrez: | Yes sir. |
| Mr. Magedson: | Okay, are you calling from Asia? |

GINGRAS LAW OFFICE, PLLC<br>4072 EAST MOUNTAIN VISTA DRIVE<br>PHOENIX, ARIZONA 85048

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

CV10-01360 SVW

| | | |
|---|---|---|
| 1 | Mr. Mobrez: | No, I'm calling from Los Angeles office. |
| 2 | Mr. Magedson: | Okay.  How can I help you? |
| 3 | Mr. Mobrez: | Well, the issue is just we been reported with your website, |
| 4 | | and then I'm trying to find out how we resolve this issue, how |
| 5 | | can we -- what can I do here? |
| 6 | Mr. Magedson: | You need to send us an e-mail, and we can send you the |
| 7 | | options.  We can't discuss that by phone. |
| 8 | Mr. Mobrez: | Oh, I see.  Where do I send it? |
| 9 | Mr. Magedson: | You click on 'Contact Us' down at the bottom of the page. |
| 10 | Mr. Mobrez: | Bottom of the page, okay. |
| 11 | Mr. Magedson: | And you tell us of the situation. Just try to make it short and |
| 12 | | brief. Okay? |
| 13 | Mr. Mobrez: | Say it again. |
| 14 | Mr. Magedson: | Other than that, thank you for calling.  [Hangs up phone] |
| 15 | Mr. Mobrez: | Hello?  Oh. |

16  DOSF ¶ 56.   Like the first call, the transcripts of the other calls bear virtually no

17  similarity to any of the allegations contained in Mr. Mobrez's declaration.   These

18  transcripts (*see* DSOF ¶¶ 56–62) clearly show that Mr. Magedson never asked for money,

19  never bragged about Ripoff Report's immunity, and never offered to enroll AEI in the

20  CAP program.  All of these allegations are inflammatory lies concocted by Mr. Mobrez.

21       **A.      Facts Relating to CDA Immunity**

22       As explained below, because Plaintiffs' factual allegations of extortion are

23  demonstrably false, those claims fail on the merits and summary judgment is appropriate

24  as to those claims for that reason alone.   However, to the extent that any of Plaintiffs'

25  claims (including their RICO claims) are dependent upon treating Defendants as the

26  "speaker" or "publisher" of any negative posts about AEI, Mr. Mobrez, or Ms. Llaneras,

27  these claims are barred by the Communications Decency Act, 47 U.S.C. § 230(c)(1).  As

28  such a short recitation of facts material to the CDA are necessary.

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

CV10-01360 SVW

First, as of May 2010, there are six reports about AEI on the Ripoff Report site. DOSF ¶ 63. All of these reports were created by third parties, not by Defendants. DOSF ¶ 64. Before they appeared on the site, each report about AEI was reviewed by one of Xcentric's staff of content monitors. DOSF ¶ 65. Xcentric's servers automatically record the name of each content monitor who reviews a post made to the site. DOSF ¶ 66. Each content monitor who reviewed the posts about AEI has testified that no changes, additions, or deletions were made to any of these reports, nor were any changes, additions or deletions made to the comments/rebuttals. DOSF ¶ 67. The text of each report and each comment/rebuttal originated entirely with the third party author. DOSF ¶ 68.

When an author submits a report to the Ripoff Report site, they are presented with a series of blank forms that help them to construct their report. DOSF ¶ 69. The forms ask the author for basic information such as the name of the person or company they want to write about, and the address and phone number of the company at issue. DOSF ¶ 70.

During this process, the author is asked to prepare a title for their report by entering data into four boxes. The first box asks for the name of the company being reported, the second box asks for "descriptive words" explaining what the report is about, the third box asks for the city, and the fourth box asks for the state. DOSF ¶ 71. During this process, the site explains "The title of your report is divided into four boxes below but will appear as one line after your report is submitted." DOSF ¶ 72. The site also shows the author a sample of how the report title would appear based on the data they have entered. DOSF ¶ 73. The author is also asked to select a topic and category for their report. DOSF ¶ 74. The list of topics and categories includes hundreds of choices some of which are entirely benign (i.e., electronics) while some are more critical (i.e., Unusual Rip-Off). DOSF ¶ 75. Xcentric does not make any suggestion as to what topic or category an author should select. DOSF ¶ 76.

At the screen where the actual report text is entered, the author is presented with a blank box. DOSF ¶ 77. Xcentric makes no suggestion as to what the author should say

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

10

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

CV10-01360 SVW

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

1  other than offering generic comments about style such as "DO NOT use ALL CAPITAL

2  LETTERS, it makes it hard to read."  DOSF ¶ 78.

3          Before the author is allowed to submit their report, they are required to review and

4  agree to certain terms which state, among other things, "By posting this report/rebuttal, I

5  attest this report is valid."   The author must also separately agree to Xcentric's Terms of

6  Service which state, among other things, "You will NOT post on ROR any defamatory,

7  inaccurate, abusive, obscene, profane, offensive, threatening, harassing, racially

8  offensive, or illegal material, or any material that infringes or violates another party's

9  rights."  DOSF ¶ 79.

10          When a report is finally submitted to the site, Xcentric's servers automatically

11  combine the unique text supplied by the author with various HTML code that is generic

12  to every page on the site.  DOSF ¶ 80.  During this process and using keywords supplied

13  by the author (such as the name of the company being reported), Xcentric's servers

14  automatically create "meta tags" which are used by search engines to index the contents

15  of the specific page at issue.  DOSF ¶ 81.  The meta tags for each page are not normally

16  visible to viewers, but they can be seen by individuals with basic technical knowledge

17  who choose to view the actual HTML code for a report's webpage.  DOSF ¶ 82.

18          The term "Ripoff Report" is a federally registered trademark used to identify the

19  website www.RipoffReport.com.  DOSF ¶ 83.  Every report page on the Ripoff Report

20  site includes meta tags based on unique keywords supplied from the author such as the

21  name of the company involved and other words used by the author to create the title for

22  their report.  DOSF ¶ 84.  Xcentric's servers also automatically include three different

23  keywords—rip-off, ripoff, rip off—into the meta tags of every page on the site.  DOSF ¶

24  85.  Again, these words are NOT visible in the title or body of any particular report; they

25  are simply indexing references used by search engines in order to accurately reflect the

26  source of the indexed page.  DOSF ¶ 86.  If the keywords "rip-off, ripoff, rip off" were

27  removed from the meta tags for each report page, the page would appear physically

28  unchanged to anyone viewing it.  DOSF ¶ 87.

11

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1   III.   **ARGUMENT**

2      **A.   Plaintiffs Have Lied About Being Extorted**

3      Considering the evidence above, summary judgment is clearly appropriate as to

4   Plaintiffs' claims of RICO/extortion for one simple reason—the undisputed evidence

5   shows that Plaintiffs have lied and that their extortion claims are factually false.  It is

6   undisputed that Mr. Magedson never asked Mr. Mobrez for any money, never promised

7   to make negative information "go away", and never made any threats of any kind

8   whatsoever.   All of these allegations are patently fictional and false. As such, no

9   reasonable jury could possibly find in favor of Plaintiffs on these claims.

10     Defendants are fully aware that summary judgment normally cannot be granted

11  when the evidence is conflicting, and Defendants recognize that Plaintiffs may seek to

12  avoid summary judgment by denying their dishonesty or attempting to convince the court

13  of some metaphysical evidentiary doubt in an effort to show a triable factual dispute.

14  Even if this occurs, ample law supports granting summary judgment in this situation.

15     For instance, in *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769 (2007), the U.S.

16  Supreme Court was asked to consider the lower court's denial of summary judgment to

17  the defendant in a case arising from a police chase in which the fleeing suspect's car was

18  forced off the road by police, rendering the suspect a quadriplegic.  *See Scott*, 550 U.S. at

19  374–76, 127 S.Ct. at 1773.  The basic issue in the case was whether the defendant (a

20  police officer who was chasing the fleeing plaintiff) was entitled to qualified immunity

21  for his actions.  Ultimately, the disposition of that issue turned on whether the suspect

22  was driving so dangerously that deadly force was justified to stop him.

23     The trial court held that summary judgment in favor of the police officer was

24  inappropriate because the plaintiff claimed that he had been driving safely, slowing for

25  turns, using his turn signals, and otherwise not acting so recklessly that deadly force was

26  justified.  *See* 550 U.S. at 374–76, 127 S.Ct. at 1773.  Based on this argument, the trial

27  court held "there are material issues of fact on which the issue of qualified immunity

28  turns which present sufficient disagreement to require submission to a jury."  *Id*. at 376

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

12

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

CV10-01360 SVW

1    (quoting *Harris v. Coweta County*, No. 3:01-CV-148-WBH, 2003 WL 25419527

2    (N.D.Ga. Sept. 23, 2003)).  Following an interlocutory appeal of the qualified immunity

3    issue, the Eleventh Circuit affirmed the denial of summary judgment.

4         The Supreme Court granted certiorari and *reversed*, finding that despite the

5    alleged evidentiary conflicts, the police offer was entitled to summary judgment on the

6    issue of qualified immunity.  *See* 550 U.S. at 376, 127 S.Ct. at 1774.   This decision was

7    based on the presence of a unique item of evidence—a <u>videotape</u> from the officer's

8    dashboard mounted video camera showing the actual chase from his perspective.

9         Even though the fleeing suspect claimed that he was not driving recklessly, the

10   Supreme Court rejected his testimony because, "[t]he videotape tells quite a different

11   story … .  Far from being the cautious and controlled driver the lower court depicts, what

12   we see on the video more closely resembles a Hollywood-style car chase of the most

13   frightening sort, placing police officers and innocent bystanders alike at great risk of

14   serious injury." *Id*. at 379–80, 127 S.Ct. at 1775–76.  Based on the facts shown on the

15   video, the Supreme Court found that summary judgment was proper because

16   "<u>Respondent's version of events is so utterly discredited by the record that no reasonable

17   jury could have believed him</u>." *Id*. at 380, 127 S.Ct. at 1776 (emphasis added).

18        The same is true here.  Before they knew that the calls between Mr. Mobrez and

19   Mr. Magedson were recorded, Plaintiffs concocted their phony extortion claims in this

20   case in an effort to falsely smear and malign Defendants.   As the Supreme Court held in

21   *Scott*, Plaintiffs' testimony cannot defeat summary judgment because the six recorded

22   telephone calls (two of which were voicemails left by Mr. Mobrez)[4] are so totally and

23   completely inconsistent with Plaintiffs' versions of the facts that no reasonable juror

24   could possibly believe Mr. Mobrez and his wife.  Of course, the recordings are not the

25   only evidence as to this issue.  Among other things, Mr. Mobrez's own telephone bills

26   completely corroborate the dates, times, and length of each call, and importantly these

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

27

28   [4] Interestingly, Mr. Mobrez's May 3, 2010 declaration never mentions any voicemails left
     for Mr. Magedson, though the recordings prove two voicemails were left by Mr. Mobrez.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

CV10-01360 SVW

1   bills also establish something else—that no other calls were made.   Furthermore, Mr.

2   Magedson affirms that the recordings are entirely accurate and he flatly denies ever

3   asking Mr. Mobrez for money or discussing the Corporate Advocacy Program with him

4   in any detail except to say that he (Magedson) would not discuss the program over the

5   phone.

6          Given this overwhelming evidence, any unsupported assertion that the tapes are

7   not what they appear to be is simply untenable and insufficient to defeat summary

8   judgment.   *See FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (noting, "A non-

9   movant's bald assertions or a mere scintilla of evidence are both insufficient to withstand

10  summary judgment.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106

11  S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652,

12  658 (9th Cir. 2007)).   Because the undisputed facts show that Plaintiffs have lied and that

13  they were never extorted by Defendants, summary judgment should be granted in favor

14  of Defendants as to both of Plaintiffs' RICO claims.

15      **B.      AEI Lacks RICO Standing**

16          Entirely separate and apart from the issue of the audio recordings, Plaintiffs'

17  RICO claims also fail because Plaintiffs lack standing under RICO.   Put simply, in order

18  to have standing to bring a RICO action, a plaintiff is required to prove, *inter alia*, "(1)

19  that his alleged harm qualifies as injury to his business or property; and (2) that his harm

20  was "by reason of" the RICO violation, which requires the plaintiff to establish proximate

21  causation."   *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008)

22  (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117

23  L.Ed.2d 532 (1992); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275,

24  87 L.Ed.2d 346 (1985)).

25          Here, the undisputed facts show that Plaintiffs have no evidence whatsoever as to

26  these mandatory criteria for at least three reasons.   Specifically—1.) there is no evidence

27  that Plaintiffs were harmed by a "pattern" of racketeering; 2.) Plaintiffs have no evidence

28  of causation OR damages; and 3.) to the extent plaintiffs are seeking to recover harm to

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

14

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1    their reputation under RICO, such damages are unavailable as a matter of law.  Each
2    point is discussed in turn below.

3                   **1.      There Is No Evidence That Plaintiffs Were Harmed By A**
4                            **"<u>Pattern</u>" Of Racketeering Activity**

5            Civil and criminal RICO cases share four common elements: 1.) conduct 2.) of an
6    enterprise 3.) through a pattern 4.) of racketeering activity. *See* 18 U.S.C. § 1962; *Sun*
7    *Savings and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987).    The phrase
8    '*pattern of racketeering activity*' is defined in 18 U.S.C. § 1961 requiring "at least <u>two</u>
9    <u>acts</u> of racketeering activity … ."  Here, ¶ 64 Plaintiffs' Complaint makes only a cursory
10   allegation that the emails between the parties and the calls from Mr. Mobrez to Mr.
11   Magedson about the CAP program qualify as "several predicate acts" sufficient to
12   demonstrate the pattern required under RICO.   This position is wrong as a matter of law
13   because "multiple acts in furtherance of a *single* extortion episode constitute only a single
14   predicate act of attempted extortion, not a pattern of two or more predicate acts."
15   *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A, Inc.*, 354 S.Supp.2d 294 (S.D.N.Y.
16   2004) (quoting *Linens of Europe, Inc. v. Best Manufacturing, Inc.*, 2004 WL 2071689,
17   *16 (S.D.N.Y. 2004) (citing *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2nd Cir. 1992);
18   *Tellis v. United States Fidelity & Guaranty Co.*, 826 F.2d 477, 478 (7th Cir. 1986)).

19           Here, the undisputed evidence shows that Plaintiffs were never the victims of even
20   a single act or extortion, much less two or more acts needed to demonstrate the pattern
21   required by RICO.  Indeed, even accepting their fabricated version of the facts as true, the
22   conversations between Mr. Mobrez and Mr. Magedson were nothing more than an
23   ongoing discussion in furtherance of a single event.  Because Plaintiffs cannot show they
24   were harmed by a pattern of racketeering, their RICO claims fail as a matter of law.

25                   **2.      Plaintiffs Have No Evidence Of RICO Damages**

26            Unlike their criminal counterparts, <u>civil</u> RICO cases contain a so-called "fifth
27   element"—<u>damages</u>.  As explained in the statutory text itself, damages are a mandatory
28   element of a civil RICO claim; "Any person <u>injured</u> in his business or property by reason

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

15

1    of a violation of section 1962 of this chapter may sue therefore in any appropriate United

2    States district court and shall recover threefold the <u>damages</u> he sustains … .” 18 U.S.C. §

3    1964(c) (emphasis added).  In order to satisfy the damages requirement of a civil RICO

4    claim, “a plaintiff must … show that the defendant caused injury to his business or

5    property.”  *Fireman’s Fund Ins. Co. v. Stites*, 258 F.3d 1016, 1021 (9th Cir. 2001).

6         The failure to prove damages/harm to a plaintiff’s business or property is fatal to a

7    civil RICO claim; “Without a harm to a specific business or property interest—a

8    categorical inquiry typically determined by reference to state law—there is no injury to

9    business or property within the meaning of RICO.”  *JM Martinac Shipbuilding Corp. v.*

10   *Washington*, 2010 WL 325950 (9th Cir. Jan. 29, 2010) (citing 18 U.S.C. § 1964(c))

11   (quoting *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005)).  In fact, as the United States

12   Supreme Court has explained, without proof of actual economic damages a plaintiff has

13   no standing to sue under RICO:

> Conducting an enterprise that affects interstate commerce is obviously not
> in itself a violation of § 1962, nor is mere commission of the predicate
> offenses.  In addition, <u>the plaintiff only has standing if, and can only
> recover to the extent that, he has been injured in his business or property *by
> the conduct constituting the violation*</u>.  As the Seventh Circuit has stated,
> “[a] defendant who violates section 1962 is not liable for treble damages to
> everyone he might have injured by other conduct, *<u>nor is the defendant
> liable to those who have not been injured</u>*.”

20   *Sedima, S.P.R.L.   v. Imrex Company, Inc.*, 473 U.S. 479, 496–97, 105 S.Ct. 3275, 3285

21   (1985) (emphasis added) (quoting *Haroco, Inc. v. American Nat’l Bank & Trust Co. of*

22   *Chicago*, 747 F.2d 384, 398 (7th Cir. 1984), *aff’d*, 473 U.S. 606, 105 S.Ct. 3291).

23         Here, Plaintiffs’ RICO claims fail because they have no evidence whatsoever that

24   they have suffered any damages to their “business or property” by virtue of the allegedly

25   extortionate demands made by Mr. Magedson.   As explained above, no extortion

26   occurred here, but even assuming *arguendo* that it did, Plaintiffs still cannot recover

27   under RICO absent proof that these predicate acts actually <u>caused</u> economic damage to

28   them; “<u>the plaintiff must show that he has suffered a concrete financial loss by</u>

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

16

**DEFENDANTS’ MOTION FOR SUMMARY JUDGMENT**

1  documenting the amount of damages to which he is entitled." *Fireman's Fund*, 258 F.3d

2  at 1021 (emphasis added) (citing *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1481 (9th Cir.

3  1997), *aff'd. on other grounds*, *Humana, Inc. v. Forsyth*, 525 U.S. 299, 119 S.Ct. 710,

4  142 L.Ed.2d 753 (1999)).   Because it is undisputed that Plaintiffs cannot show any

5  damages as a result of the alleged extortion, their RICO claims fail as a matter of law.

6      As explained *supra*, it is an undisputed fact that Plaintiffs never joined the

7  Corporate Advocacy Program.  DSOF ¶ 88.   It is also undisputed that during its nine

8  years in the "seminar" business, AEI never produced any seminars, never attempted to do

9  so, and it never had any revenue or any profits of any kind.  DSOF ¶¶ 8, 9.  Because AEI

10  literally never existed as a viable "business" despite nine years of trying (most of which

11  occurred before any complaints appeared on the Ripoff Report), Plaintiffs cannot show

12  that AEI suffered any harm as a result of anything said in the conversations between Mr.

13  Magedson and Mr. Mobrez in April and May 2009.  Standing alone, this fact requires the

14  entry of summary judgment in favor of Defendants as to Plaintiffs' RICO claims.

15      **3.    Reputational Damages Are Not Recoverable Under RICO**

16      Because it is so clear that Plaintiffs cannot establish any economic damage to AEI,

17  it is expected they may try to argue that because some of the statements are defamatory

18  *per se*, damage to their reputations may be *presumed*.  Thus, Plaintiffs' may argue their

19  presumptive reputational loss is sufficient to provide standing under RICO.   This

20  argument (if it is made) is wrong for two reasons.

21      First, as a matter of law, damage to a person's reputation is not "business or

22  property" within the meaning of RICO, so harm arising from an alleged defamatory

23  publication is simply unrecoverable under RICO.  This was the precise holding in *Padilla*

24  *Rodriguez v. Llorens Quiñones*, 813 F.Supp. 924 (D.Puerto Rico 1993) which involved a

25  dispute between the plaintiff (a superior court judge) and the defendant (a local district

26  attorney).   According to the complaint, the defendant devised a plan to destroy the

27  plaintiff's reputation so he could take over the plaintiff's judgeship.  *See Padilla*

28  *Rodriguez*, 813 F.Supp. at 925–26.   The plan included a variety of attacks including the

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

17

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1  publication of defamatory statements accusing the judge of being "corrupt" and engaging

2  in wrongdoing. *See id.*

3       The district court held that RICO's statutory text limits a plaintiff's recovery to

4  harm to their "business or property".  Because the primary harm alleged was reputational,

5  the court found that any such damages could not be recovered under RICO:

> In endeavoring to determine whether an injury to reputation is an injury to
> business or property under Section 1964(c), or, alternatively, is more akin
> to personal injury, it is essential to keep in mind RICO's specific purpose
> to thwart the criminal invasion and acquisition of legitimate business
> enterprises and property. The plaintiffs in this case are alleging nothing
> remotely resembling such an invasion or acquisition. <u>The damages which
> they claim are no more than injuries which flow from the negative articles
> published by the newspaper defendants</u>. Primary among these alleged
> damages is the plaintiffs' loss of reputation.

13  *Id.* at 928 (emphasis added).  Because reputational harm is simply not within the scope of

14  the RICO statute, the court concluded, "<u>damages relating to injury to reputation are</u>

15  <u>personal injuries not recoverable under RICO</u>."  *Id.* (emphasis added).  As noted in the

16  *Padilla Rodriguez* case, other courts have reached similar results.  *See Grogan v. Platt*,

17  835 F.2d 844, 846 (11th Cir. 1988) (holding Congress did not intend to allow recovery

18  under RICO for personal injury damages arising from wrongful death, assault and

19  battery, and negligence); *Bennett v. Centerpoint Bank*, 761 F.Supp. 908, 916 (D.N.H.),

20  *aff'd without op.*, 953 F.2d 634 (1st Cir. 1991) (finding <u>fear for one's personal safety after</u>

21  <u>receiving a threatening telephone call is not an injury to business or property as required</u>

22  <u>by Section 1964(c)</u>); *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1169–70 (3rd

23  Cir. 1987) (damages for emotional distress are not recoverable under RICO).

24       Second, even if reputational damages could theoretically be recovered under

25  RICO, Plaintiffs could not succeed on such a theory here because there is no <u>causal</u>

26  <u>connection</u> between the alleged predicate acts (apparently extortion and wire fraud) and

27  the harm to their reputations arising from the postings made by third parties on the Ripoff

28  Report.  *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461, 126 S.Ct. 1991, 1998

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

18

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

CV10-01360 SVW

1   (2006) (explaining, "When a court evaluates a RICO claim for proximate causation, the

2   central question it must ask is whether the alleged violation led directly to the plaintiff's

3   injuries.")  In other words, even if Plaintiffs' reputations were harmed, that harm was not

4   caused by Defendants' after-the-fact acts of "attempted extortion".  Rather, this harm was

5   <u>caused</u> by the third party authors who posted the reports about them in the first place.

6         As such, it is simply not possible for Plaintiffs to show that the predicate RICO

7   acts (asking Plaintiffs for money to "remedy" negative statements by posting positive

8   information) was the direct cause of harm resulting from those statements.  This

9   conclusion is demonstrated by an obvious point—the posts at issue began in January

10  2009, *before* Mr. Mobrez called Mr. Magedson in April and May 2009.  Thus, even if the

11  telephone conversations between Mr. Mobrez and Mr. Magedson never happened and

12  thus no attempted extortion took place, the harm to Plaintiffs would be exactly the same.

13  The negative postings would still exist on the Ripoff Report site and they still would have

14  caused the exact same damage to Plaintiffs' reputation.

15        Under such facts, there is no legitimate reason to allow Plaintiffs to pursue a RICO

16  claim when their reputational damages (if any) can be fully compensated by other

17  existing claims such as defamation.   *See Padilla Rodriguez*, 813 F.Supp. at 929

18  (explaining "[w]e discern no injustice in limiting a RICO plaintiff's recovery for his

19  personal injuries to ordinary non-RICO legal measures.") (quoting *Genty v. Resolution

20  Trust Corp.*, 937 F.2d 899, 918 (3rd Cir. 1991)).

21        **C.     Defendants Are Immune Under The Communications Decency Act**

22        On pages 12–16 of their anti-SLAPP motion (Doc. # 9), Defendants explained that

23  numerous state and federal courts have held that Xcentric and Mr. Magedson are immune

24  from liability arising from third-party authored statements pursuant to the

25  Communications Decency Act, 47 U.S.C. § 230(c)(1).   *See Whitney Information

26  Network, Inc. v. Xcentric Ventures, LLC*, 2008 WL 450095 (M.D.Fla. 2008) (finding

27  Xcentric and Magedson entitled to immunity under CDA); *GW Equity, LLC v. Xcentric

28  Ventures, LLC*, 2009 WL 62173 (N.D.Tex. 2009) (same); *Intellectual Art Multimedia,*

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

19

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

CV10-01360 SVW

1   *Inc. v. Milewski*, 2009 WL 2915273 (N.Y.Sup. Sept. 11, 2009); *Global Royalties, Ltd. v.*

2   *Xcentric Ventures, LLC*, 544 F.Supp.2d 929, 932 (D.Ariz. 2008)[5] (finding Xcentric and

3   Magedson immune under the CDA).  Because the material facts of this case are identical

4   to the facts of each of the above matters, this court should reach the same conclusion and

5   hold that Defendants are entitled to protection under the CDA.

6           However, as was also explained in the anti-SLAPP motion, Defendants believe

7   that Plaintiffs may ask this court to break away from these established rulings and hold

8   that some unique aspect of this case shows that CDA immunity has been lost.    Most

9   likely, before they were caught lying, Plaintiffs probably expected to rely heavily on the

10   District Court's decision in *Hy Cite Corp. v. Badbusinessbureau.com, LLC*, 418

11   F.Supp.2d 1142 (D.Ariz. 2005) (finding in the context of a 12(b)(6) motion, allegations

12   that Defendants created defamatory material and then requested money to remove it

13   stated a claim under RICO).   Indeed, many of the key factual allegations set forth in

14   Plaintiff's Complaint here were copied *verbatim* from the *Hy Cite* decision.  For instance,

15   most of the facts stated in ¶ 22 of the Complaint are either direct quotes or paraphrases

16   from *Hy Cite*.  *See Hy Cite*, 418 F.Supp.2d at 1149.

17           Again, if Plaintiffs try to analogize this case to *Hy Cite*, this argument would fail

18   for several reasons.  First, Mr. Mobrez and Ms. Llaneras have lied about being extorted;

19   no such conduct ever occurred here.  As such, the hypothetical premise of *Hy Cite*—that

20   extortionate conduct *may* defeat CDA immunity—is inapplicable here because the

21   undisputed facts show that AEI and Mr. Mobrez were never extorted.

22           Second, the court's decision in *Hy Cite* was a ruling on a Motion to Dismiss under

23   Rule 12(b)(6).  In that posture, the court was required to assume the plaintiff's allegations

24   were true even if no evidence existed to support those claims.   Unlike the 12(b)(6)

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

---

[5] NOTE—there are two *Global Royalties* decisions.  The first involved a 12(b)(6) Motion to Dismiss which was granted *with* leave to amend.  *See* 2007 WL 2949002 ("*Global Royalties I*").   The second case involved the same motion which was granted *without* leave to amend, thus ending the case.  *See* 544 F.Supp.2d 929 ("*Global Royalties II*").

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

CV10-01360 SVW

1  standard applied in *Hy Cite*, a Rule 56 Motion for Summary Judgment cannot be defeated

2  by false or conclusory allegations which lack evidentiary support.

3      Third, in *Hy Cite*, the plaintiffs alleged that Mr. Magedson personally wrote and

4  created defamatory information and then demanded money to remove the content.  Here,

5  although the Complaint contains vague allegations suggesting that Mr. Magedson

6  generally creates *some* content for the site, there is no allegation that he created the

7  specific posts at issue here.  Moreover, Mr. Mobrez admitted in his deposition that he had

8  no evidence Defendants created or altered any of the postings about AEI.  DSOF ¶ 89.

9  As such, this case is simply not analogous to the decision in *Hy Cite* and therefore CDA

10  immunity still exists.  *See Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 2007 WL

11  2949002, *3 (D.Ariz. 2007) (finding *Hy Cite* inapplicable to CDA analysis where

12  plaintiff failed to allege or prove that Mr. Magedson created defamatory content).

13      Put simply, all of Plaintiffs' non-RICO claims seek to impose liability on Xcentric

14  and Mr. Magedson for material created by a third party.  This is exactly the scenario

15  where the CDA is intended to apply, and it is exactly the scenario in which courts have

16  unanimously held that the CDA does apply.

17      The same is true even as to Plaintiffs' RICO claims.  While Plaintiffs have

18  attempted to use their RICO claims to creatively (and fraudulently) plead-around the

19  CDA, such nominal efforts do not change the substantive nature of their claims which, at

20  their core, try to blame Xcentric for the republication of third party content.  Such

21  nominal efforts to avoid the CDA are unavailing because "a plaintiff cannot sue someone

22  for publishing third-party content simply by changing the name of the theory … ."

23  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009) (emphasis added).

24      Even assuming *arguendo* that Plaintiffs had not fabricated their extortion claims

25  (which they did), and even assuming that Plaintiffs had evidence showing they have

26  suffered real injury to their property or business (which they do not), their RICO claims

27  still seek to assign unlimited civil liability to Xcentric for damages caused by one simple

28  thing—the republication of third-party generated content.  Of course, the decision to

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

21

1    publish or remove material is exactly the quintessential function of publishers which the

2    CDA was intended to protect; "claims that seek to impose liability on a website operator

3    as the speaker or publisher of third-party content--or <u>to impose liability that is 'merely a</u>

4    <u>rephrasing of' such speaker or publisher liability … are barred by the CDA … ."</u>

5    *Goddard v. Google, Inc.*, 640 F.Supp.2d 1193, 1195 (N.D.Cal. 2009) (emphasis added)

6    (quoting *Barnes*, 570 F.3d at 1106).  As other courts have held, this type of imputed

7    liability cannot defeat CDA immunity even when made in connection with a directly

8    related criminal act.  *See Gibson v. Craigslist, Inc.*, 2009 WL 1704355, *3–4 (S.D.N.Y.

9    June 15, 2009) (CDA barred claim against Craigslist for publishing an advertisement

10   selling a third-party a handgun that was used to shoot the plaintiff); *Doe v. MySpace, Inc.*,

11   474 F.Supp.2d 843 (W.D.Tex. 2007) (CDA barred claims against MySpace website for

12   failing to protect plaintiff who was sexually assaulted by person who contacted her

13   through MySpace).

14        While no court has considered the precise question present in this case—*e.g.*,

15   whether an allegation of civil RICO arising from the Corporate Advocacy Program is

16   sufficient to overcome CDA immunity as to other non-RICO claims arising from the

17   publication of third party material—it is equally true that every court that has reviewed

18   the CAP program has determined it is irrelevant to Defendants' CDA immunity:

19
20        The evidence demonstrates that Defendants have a "Corporate Advocacy
         Program," in which, for a fee, Defendants will investigate "rip-off reports"
21        targeting a company and draft and post rebuttals to a negative report.  <u>The
         Court does not find this makes Defendants "information content providers"</u>
22        <u>under the CDA.</u>  Plaintiff cites no case law demonstrating that such conduct
         bars CDA immunity, and has not demonstrated that the "Corporate
23        Advocacy Program" has played any role in this case.  <u>Like other courts to
         consider this issue, this Court does not find the "Corporate Advocacy</u>
24        <u>Program" prohibits Defendants from immunity under the CDA</u>.

25

26   *GW Equity*, 2009 WL 62173, * 13 (emphasis added) (citing *Global Royalties II*, 544

27   F.Supp.2d at 932–33 (rejecting plaintiff's argument that CAP made defendants

28   responsible for the creation or development of all of the posts on their website); *see also*

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

22

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1    *Whitney*, 2008 WL 450095, * 6 (finding CAP irrelevant to application of the CDA).

2    Bearing in mind Plaintiffs never joined Defendants' Corporate Advocacy Program,

3    because Plaintiffs' RICO and non-RICO claims all require this Court to treat Defendants

4    as the publisher or speaker of material which was provided by a third party, as a matter of

5    law those claims are barred by the CDA.

6        **D.    Plaintiffs Have No Evidence To Support Their Non-RICO Claims**

7        Although the issues presented above are dispositive as to every claim in this case,

8    a few comments should be made as to why some of Plaintiffs' other claims lack merit.

9    For the most part, it should be noted that as the party with the burden of proof at trial,

10   Plaintiffs are required to respond to this motion with admissible evidence that would be

11   sufficient to entitle them to a judgment in their favor.   Because Defendants have no

12   burden of proof as to the affirmative elements of Plaintiffs' claims, summary judgment

13   may be granted in favor of Defendants based solely on a lack of evidence supporting

14   Plaintiffs' claims.   *See Farrakhan v. Gregoire*, 590 F.3d 989, 1003 (9th Cir. 2010)

15   (explaining, "When a moving party without the ultimate burden of persuasion at trial

16   demonstrates that it is entitled to prevail as a matter of law by showing that the

17   nonmoving party has not adduced sufficient evidence of an essential element to carry its

18   ultimate burden of persuasion at trial, the moving party is entitled to summary

19   judgment.") (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102 (9th

20   Cir. 2000); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)).

21       **1.    Plaintiffs Are Not Entitled To Restitution/Injunctive Relief**
22       **Under Cal. Bus. & Prof. Code § 17200**

23       The Second Cause of Action in the Complaint asserts a claim under Cal. Bus. &

24   Prof. Code § 17200.  The factual basis of this claim is not entirely clear.  However, under

25   Bus. & Prof. Code § 17200, the only remedies available to the plaintiffs are restitution

26   and injunctive relief.  *See Bradstreet v. Wong*, 161 Cal.App.4th 1440, 75 Cal.Rptr.3d 253

27   (1st DCA 2008) (noting "A UCL action [under Bus. & Prof. Code § 17200] is equitable in

28   nature; <u>damages cannot be recovered</u>. Civil penalties may be assessed in public unfair

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

23

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1    competition actions, but the law contains no criminal provisions.   [U]nder the UCL,

2    '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.'")

3    (emphasis added) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134,

4    1144, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003)).

5        Here, it is undisputed that Plaintiffs have paid no money whatsoever to

6    Defendants, and it is undisputed that Defendants have earned no profit from the postings

7    about AEI.  Similarly, it is apparently that Plaintiffs' manifest criminal wrongdoing and

8    unclean hands would bar them from seeking any equitable relief such as an injunction.

9    As such, it does not appear that Plaintiffs are entitled to any relief under § 17200 even if

10   this claim was not barred by the CDA, which it plainly is.  *See Gentry v. eBay, Inc.*, 99

11   Cal.App.4th 816, 121 Cal.Rptr.2d 703 (4 DCA 2002) (holding claim under Cal. Bus. &

12   Prof. Code § 17200 barred by CDA).

13             **2.**   **No Evidence Exists That Defendants Intentionally Interfered**

14                 **With Plaintiffs' Economic Relations**

15       The Complaint contains three separate claims of economic interference (the

16   eighth, ninth, and tenth causes of action).  Each of these claims is based on the common

17   allegation that Defendants either intentionally or negligently interfered with Plaintiffs'

18   existing and prospective relationships with its current or would-be employees.  *See*

19   Compl. ¶¶ 93, 99, & 105.

20       Even if these three claims were not barred by the CDA, which they are, the claims

21   fail on the merits for two reasons.  First, it is undisputed that neither Xcentric nor Mr.

22   Magedson had any knowledge of Plaintiffs' relationships with their employees at the time

23   each report was posted.  DSOF ¶ 90.  Second, it is undisputed that at his deposition, Mr.

24   Mobrez was unable to identify a single employee of AEI who quit as a result of any

25   actions of Xcentric or Mr. Magedson.  DSOF ¶ 91.  In light of these undisputed facts, no

26   evidence exists to support Plaintiffs' economic interference claims. As such, summary

27   judgment is appropriate and should be entered in favor of Defendants as to Plaintiffs'

28   eighth, ninth, and tenth causes of action.

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

24

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

CV10-01360 SVW

### 3.     No Evidence Of A Conspiracy Exists

Finally, the Complaint contains two conspiracy claims; one arising under RICO (18 U.S.C. § 1962(d)), and the other under common law.  Defendants deny entering into any conspiracy with anyone and Mr. Mobrez admitted in his deposition that he had no evidence of any conspiracy between Defendants and any third parties.  DSOF ¶ 91.   As such, because Plaintiffs have no evidence to support this claim, Defendants are entitled to summary judgment on the conspiracy claims.

### IV.    CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment should be granted.

DATED this 24th day of May 2010.

**GINGRAS LAW OFFICE, PLLC**


/S/ David S. Gingras
David S. Gingras
Attorneys for Defendants
Ed Magedson and
Xcentric Ventures, LLC

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

CV10-01360 SVW

**CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2010 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Ms. Lisa Borodkin, Esq.
Mr. Daniel F. Blackert, Esq.
Asia Economic Institute
11766 Wilshire Blvd., Suite 260
Los Angeles, CA 90025
Attorneys for Plaintiffs

And a courtesy copy of the foregoing delivered to:
Honorable Stephen V. Wilson
U.S. District Judge

/s/David S. Gingras

GINGRAS LAW OFFICE, PLLC
4072 EAST MOUNTAIN VISTA DRIVE
PHOENIX, ARIZONA 85048

26
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
CV10-01360 SVW