DANIEL F. BLACKERT, ESQ., CSB No. 255021
LISA J. BORODKIN, ESQ. CSB No. 196412
**Asia Economic Institute**
11766 Wilshire Blvd., Suite 260
Los Angeles, CA 90025
Telephone (310) 806-3000
Facsimile (310) 826-4448
Daniel@asiaecon.org
Blackertesq@yahoo.com
lisa@asiaecon.org
lisa_borodkin@post.harvard.edu

Attorneys for Plaintiffs,
Asia Economic Institute LLC,
Raymond Mobrez, and
Iliana Llaneras

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIA ECONOMIC INSTITUTE, a California LLC; RAYMOND MOBREZ an individual; and ILIANA LLANERAS, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> XCENTRIC VENTURES, LLC, an Arizona LLC, d/b/a as BADBUSINESS BUREAU and/or BADBUSINESSBUREAU.COM and/or RIP OFF REPORT and/or RIPOFFREPORT.COM; BAD BUSINESS BUREAU, LLC, organized and existing under the laws of St. Kitts/Nevis, West Indies; EDWARD MAGEDSON an individual, and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No.: 2:10-cv-01360-SVW-PJW <br><br> **PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> **[FILED CONCURRENTLY WITH PLAINTIFFS' STATEMENT OF GENUINE ISSUES; PLAINTIFFS' OBJECTIONS TO EVIDENCE; DECLARATION OF RAYMOND MOBREZ; DECLARATION OF DANIEL BLACKERT; DECLARATION OF LISA BORODKIN; DECLARATION OF TINA NORRIS; DECLARATION OF PATRICIA BRAST; DECLARATION OF CHARLIE YAN; DECLARATION OF ISRAEL RODRIGUEZ; DECLARATION OF JUSTIN LIN; DECLARATION OF KRISTI JAHNKE]** <br><br> The Honorable Stephen V. Wilson <br><br> Hearing Date: June 28, 2010 <br> Time: 1:30 P.M. <br> Courtroom 6 <br><br> Pretrial Conference: August 2, 2010 <br> Trial Date: August 3, 2010 |

**MEMORANDUM OF LAW**

## 1. <u>Preliminary Statement</u>

This motion for summary judgment must be denied.  Defendants' entire motion turns on the alleged credibility of one witness regarding immaterial details of the claim for extortion.  The interests of justice require that this action proceed to trial on the RICO and extortion claims on August 3, 2010. At least one of the over 100,000 subjects of the Ripoff Report – a website seen by millions of viewers every day – must have its day in court.

The evidence that "Ripoff Report" is an extortion scam is overwhelming. Along with this Memorandum of Law, Plaintiffs submit the declarations of two other victims:  Tina Norris ("Norris Dec.") and Patricia Brast ("Brast Dec."). DN-57, DN-58.

Defendants have previously fought off legal challenges in other courts under the guise of immunity under the Communications Decency Act. In this Court, the true nature of the "Corporate Advocacy Program" is about to be determined. Judgment day is near.  Defendants have attempted to thwart Plaintiffs in their trial preparation by filing this meritless motion for summary judgment.

In addition, this motion is premature. Plaintiffs have not had an adequate opportunity to take discovery.  Plaintiffs have tried to streamline discovery by asking to bifurcate discovery. DN-52.  Plaintiffs have a pending motion for June 24, 2010 on the motion to bifurcate discovery. DN-52.  Defendants have unreasonably refused.  DN-52.  There are too many unanswered questions, too many credibility contests, too many factual disputes, too much circumstantial evidence, and too many doubts as to the accuracy and reliability of evidence submitted by the Defendants for summary judgment to be granted. This motion should be denied, and this case should proceed with the bifurcated trial set for August 3, 2010.

**2.    <u>Relevant Factual Background</u>**

The facts in Plaintiffs' Statement of Genuine Issues are hereby incorporated into this Memorandum of Law. DN-64.  For the convenience of this Court, portions of that Statement are set forth below.

Plaintiffs are Asia Economic Institute ("AEI"), Raymond Mobrez and Iliana Llaneras ("Plaintiffs").  Mr. Mobrez and Ms. Llaneras are married.  AEI has been in the business of developing relationships between Asia and the United States, and putting on seminars and conferences.  That is, until Ripoffreport.com shut them down.

In or around January 2009, the first Ripoff report about AEI was posted. From January 2009 to July 2009, Plaintiffs attempted to discover the authors of, or take down, the harmful reports. Plaintiffs' Statement of Genuine Issues ("PSGI") Response ¶¶12-25.  It was then that they discovered the nefarious "Catch-22" of the Ripoff Report:  Ripoff Report will not do aything about the posts until the subject "admits responsibility" and pays to be in the Corporate Advocacy Program ("CAP").  See Declaration of Daniel F. Blackert ("Blackert Dec.") ¶22, Ex. 21. Applicants must also agree not to sue Defendants and not to sue the authors of reports.  Id. In addition, Defendants claim that suing them is nearly impossible, and that anyone who tries will end up paying Defendants' legal fees.  PSGI Material Fact ¶¶23, 44.

**3.    <u>Legal Discussion</u>**

**A.    <u>This Motion Should Be Denied Because Discovery Is Not Complete</u>**

This motion for summary judgment should be denied because it is premature.

Rule 56(f) of the Federal Rules of Civil Procedure states:

**(f) When Affidavits Are Unavailable.** If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
**(1)** deny the motion;
**(2)** order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
**(3)** issue any other just order

Fed. R. Civ. P. 56(f). Plaintiffs hereby request a continuance under Rule 56(f). Under Federal Rule of Civil Procedure 56(f), a continuance should be granted as a matter of course.  See, e.g., <u>Burlington Northern Santa Fe v. Assiniboine & Sioux Tribes</u>, 323 F.3d 767, 774 (9th Cir. 2003).

Discovery is ongoing, and Plaintiffs have filed a motion to bifurcate discovery to match the bifurcated trial. DN-52.  Plaintiffs have also moved to compel discovery that is in the sole possession of Defendants. Id. Defendants have refused to provide necessary discovery under claim of a protective order regarding confidentiality. Id. See Declaration of Lisa J. Borodkin in support of Plaintiffs' Motion to Compel. DN-52.  Therefore, this motion should be denied or continued.

## B.  <u>Plaintiffs Have Come forth with Evidence Sufficient to Raise a Genuine Issue of Material Fact on Their Civil Extortion Claim</u>

California's extortion statute, Penal Code Section 518, defines "exortion" as follows:

"Extortion is the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, <u>induced by a wrongful use of force or fear</u>, or under color of official right."

Cal. Penal Code § 518 (emphasis added).

"Fear" for purposes of California's extortion statute, is defined in California Penal Code Section 519 as follows:

Plaintiffs' Memorandum of Law in Opposition to Defendants' MSJ  10-cv-1360

4

> "Fear, such as will constitute extortion, may be induced by <u>a threat</u>, either:
> 1. To do an unlawful injury to the person or property of the individual threatened or of a third person; or,
> 2. To accuse the individual threatened, or any relative of his, or member of his family, of any crime; or,
> 3. <u>To expose, or to impute to him or them any deformity, disgrace or crime; or,</u>
> 4. <u>To expose any secret affecting him or them</u>."

Cal. Penal Code § 519 (emphasis added).

Under California Penal Code Section 523, a person who attempts to commit extortion and sends any writing referring to any "threat" as defined in Penal Code Section 519 is punishable in the same way as if property were obtained thereby:

> Every person who, <u>with intent to extort any money or other property from another, sends or delivers to any person any letter or other writing,</u> whether subscribed or not, <u>expressing or implying, or adapted to imply, any threat such as is specified in Section 519</u>, is punishable in the same manner as if such money or property were actually obtained by means of such threat.

Cal. Penal Code § 523 (emphasis added).

In <u>Monex Deposit Co. v. Gilliam</u>, the court defined extortion as "the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear." 2009 U.S. Dist. LEXIS 85761, 3-6 (C.D. Cal. Sept. 4, 2009) (Selna, J.). The <u>Monex</u> court recognized the implied cause of action under California Penal Code § 523. Because Penal Code 523 penalizes attempts to extort as actual extortion as long as the threat is evidenced in writing, it is immaterial that Plaintiffs never entered into the Corporate Advocacy Program or never paid money to the Defendants.

Defendants' threats are evidenced in writings. The threats take at least two forms. One "threat" is the implied threat that negative statements about the

subject of a Ripoff Report will remain online and prominently featured in search results unless the subject joins the Corporate Advocacy Program ("CAP"). Thus, Defendants' solicitations to join CAP are part of the implied threat. See, e.g., Plaintiffs' Statement of Genuine Issues in Opposition to Defendants' Motion for Summary Judgment ("PSGI") Material Fact ¶¶21, 26, 27, 28, 30 (emails attached to Declaration of Tina Norris); Material Fact ¶25 (emails referencing links to RipoffReports.com website that explains how the CAP 'works").

The price of joining CAP is set at the time the subject applies for the program. PGSI Material Fact ¶¶28, 29. The cost of joining CAP has two components: An initial set-up fee of generally $7,500, see PSGI Material Fact ¶28-29, and a monthly fee for a 36-month term of between $100 and $5,500 *per month*, see PSGI ¶¶28, 32. Because the monthly cost of CAP is determined by the number of reports about the prospective CAP applicant at the time of application, the longer a target waits, the more expensive it will be to join CAP. PSGI Material Fact ¶31. Because Defendants claim that reports are never removed, and the price of joining CAP goes up as more reports are filed, PSGI Material Fact ¶31, this system constitutes extortion under California Penal Code Section 523. There is no evidence that CAP members receive value for their enrollment costs, aside from a generic text that Defendants add to the top of every previous negative report. PSGI ¶ 36.

The other type of "threat" is that Defendants threaten to counter-sue anybody that sues them and that such litigants always lose and always pay Defendants' attorneys fees. Defendants send a standard email in response to those inquiring about how to respond to Ripoff Reports that warn that a lawsuit against Defendants is a losing battle, boasting that they have "NEVER lost a case." PSGI Material Fact ¶23. Defendants state that they hope their lawyers are intimidating. PSGI Material Fact ¶44. Defendants admit that their attorneys

wrote the portion of the Ripoff Report Website that states "if you are thinking of suing us, read this first."  Declaration of Lisa J. Borodkin ("Borodkin Dec.") at Ex. 8.

Plaintiffs have adduced evidence sufficient to raise a triable issue of fact on a claim for attempted extortion. Plaintiffs have come forth with evidence of writings from Defendants implying the threats to expose victims to disgrace or exposing secrets.  Defendants' almost exclusive reliance on a credibility issue regarding the accuracy of the recordings is not sufficient to defeat summary judgment.

### C.   **Plaintiffs Have Come Forth with Evidence Sufficient to Raise a Genuine Issue of Material Fact on the RICO Claim.**

The Racketeer Influenced and Corrupt Organizations Act ("RICO") makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which effect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises' affairs through a pattern of racketeering activity." See 18 U.S.C. § 1962(c), or to conspire to do so. 18 U.S.C. § 1962(d).  In addition to the criminal penalties imposed for violations of RICO, Congress also set forth a "far-reaching civil enforcement scheme" to include enforcement by private suit. See Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 481 (1985). "[A]ny person injured in his business or property by reason of a violation of section 1962 of this chapter" may recover treble damages, costs, and attorney's fees. See 18 U.S.C. § 1964(c).

In their motion for summary judgment, Defendants claim that the Plaintiffs lack standing under RICO. Specifically, they contend that: (1) there is no evidence that Plaintiffs were harmed by a "pattern" of racketeering; (2) Plaintiffs have no evidence of RICO damages; and (3) reputational damages are not recoverable under RICO. These arguments have no merit.

### 1.    <u>Plaintiffs Were Harmed By a "Pattern" of Racketeering.</u>

Defendants appear to misguide the Court into believing the Plaintiffs' case relies solely on communications between Plaintiff Raymond Mobrez and Defendant Edward Magedson.  Defendants fail to address the evidence which suggests that Defendants' Corporate Advocacy Program is a sham. Defendants also appear to neglect the Plaintiffs' allegations of wire fraud as defined by 18 U.S.C. § 1343. Moreover, Defendants' argument that the Plaintiffs have not suffered a compensable injury to its business or property is against case law. The injury suffered by the Plaintiffs is casually connected to the Defendants' attempted extortion and wire fraud. A violation of 18 U.S.C. § 1962(c) requires proof of (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. See, <u>e.g.</u>, <u>H.J. Inc. v. Northwestern Bell</u>, 492 U.S. 229, 240-43 (1989); <u>Religious Technology Ctr. v. Wollersheim</u>, 971 F.2d 364, 36-67 (9th Cir. 1992).

Defendants do not dispute the existence of the first two elements but, instead, chose to argue that the Plaintiffs cannot establish a "pattern of racketeering activity." To this end, they suggest that the telephonic and electronic communication between Plaintiff Mobrez and Defendant Magedson is insufficient proof of the pattern required under RICO. Citing case law from outside of this jurisdiction, Defendants argue that the conversations are merely "multiple acts in furtherance of a single extortion episode." Defendants' Brief at 15.

This argument completely mischaracterizes Plaintiffs' RICO claims. Defendants appear to intentionally overlook the allegations contained in ¶ 65 of Plaintiffs' Complaint, wherein Plaintiffs aver that "Defendants and individuals associated with them have perpetrated this scheme upon other entities…" Plaintiffs' Complaint ¶ 65. Defendants do nothing to dispel this accusation. On the other hand, Plaintiffs are able to provide testimony from other individuals and businesses to substantiate this allegation.   See Norris Dec. [DN-57], Brast

Dec. [DN-58].  Defendants have also testified that the minimum term of a CAP agreement is three years.  Blackert Dec. ¶6, Ex. 3.  PSGI Material Fact ¶28. Thus, the RICO pattern is open-ended and continuing.

Furthermore, in arguing that the aforementioned communication does not establish a pattern of two or more predicate acts, Defendants neglect to address the allegations of wire fraud averred in Plaintiffs' Complaint. However, Paragraph 66 of Plaintiffs' Complaint specifically states that "[t]he overall scheme and design of the websites as a means to extort money from companies such as Plaintiff and the fraudulent claims made in furtherance of that scheme constitute violations of 18 U.S.C. § 1341, particularly here where all of the communications are made over the Internet." Plaintiffs' Complaint ¶ 66. Again, Defendants do nothing to contest this allegation. Because it is the <u>burden of the moving party</u> "to demonstrate an absence of genuine issue of material fact," it is not necessary to address proof of this allegation at this stage. Plaintiffs will prove a pattern of RICO wire fraud at trial.

     2.    **Plaintiffs Have Evidence of RICO Damages**

"[A RICO] plaintiff must…show that the defendant caused injury to his business or property."  See <u>Fireman's Fund Ins. Co. v. Stites</u>, 258 F.3d 1016, 1021 (9th Cir. 2001). Defendants contend that the Plaintiffs are unable to prove this sort of injury because (1) "Plaintiffs never joined the Corporate Advocacy Program" and (2) "AEI never produced any seminars, never attempted to do so, and it never had any revenue or profits of any kind." These arguments not only underestimate the damages incurred by the Plaintiffs in this case, but also ignore case law rejecting these very arguments.

First, Plaintiffs unwillingness to accede to the Defendants' extortionate demands does not indicate that the Plaintiffs were not injured. See <u>Monex</u>, 680 F. Supp. 2d 1148, 1156, 1159-60 (C.D. Cal. 2010) (Selna, J.).

Second, the Defendants' argument discounts the significance of lost prospective profits. California recognizes damages for the loss of prospective profits so long as "their nature and occurrence can be shown by evidence of reasonable reliability." See Grupe v. Glick, 26 Cal. 2d 680 (Cal. 1945); Kids' Universe v. In2labs, 95 Cal. App. 4th 870 (Cal. App. 2d Dist. 2002). "[D]amages may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like." Kids' Universe, 95 Cal. App. 4th at 884, citing Restatement (Second) of Contracts § 352, comment b. Defendants do not argue that the Plaintiffs lack sufficient proof of such damages. Such an argument would be premature as both parties are undergoing discovering this very evidence. Accordingly, an issue of material fact exists.

Third, Defendants fail to consider the damage suffered by the Plaintiffs individually. Plaintiffs have submitted tax returns of AEI to show the investments that were lost in building the company before its prospects were prematurely cut short by Defendants' racketeering.  See Declaration of Iliana Llaneras. DN- 68.

Finally, the Defendants overlooked Plaintiffs' claims for intentional interference with contract and interference with prospective business relations. The Ninth Circuit has already held that interference with a persons' business relations was a "property interest sufficient to provide standing under RICO." Davis, 420 F.3d at 900, citing Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1168 n.4 (9th Cir. 2002) (holding plaintiffs did allege an injury to a property interest, the "legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes"). In other words, California law "protects the legal entitlement to both current and prospective contractual relations" and interference with these interests constitutes an injury to business or property. Accordingly, the Plaintiffs are able to show compensable damage as a result of

the alleged extortion.

### 3.   <u>Plaintiffs Have Shown More than Reputational Damage</u>

Despite the various damages disclosed by the Plaintiffs in their Initial Disclosures, Defendants appear to believe Plaintiffs have only suffered reputational injury. Relying on case law from outside this jurisdiction, Defendants argue that damage to a person's reputation is not "business or property" within the meaning of RICO. Defendants' Brief on Motion for Summary Judgment at 21-22. Assuming <u>arguendo</u> that the Defendants are correct, Defendants fail to address other injuries alleged by the Plaintiffs – allegations which once again are ignored by the Defendant.

Defendants also argue that there is "no <u>casual connection</u> between the alleged predicate acts…and the harm to their reputation arising from the postings made by third parties on the Ripoff Report." They contend that the damage was caused by the defamatory posts authored by third parties. However, this argument fails to consider the undisputed evidence that the Defendants themselves create the defamatory meta tags which appear on popular search engines such as Google.com and use this position as a mechanism for extorting money from individuals and companies such as the Plaintiffs. See PSGI Material Fact ¶¶11-12, 15-16.  It is undisputed that, when asked to remove this content, Defendants request a sum of at least "$7,500." Blackert Dec. ¶13; PSGI ¶¶28-29, to "change the negative listings into a positive." Blackert Dec. ¶43, Ex. 41.

Moreover, the Plaintiffs have been injured by Defendants regardless of who authored the defaming Ripoff Reports. Alone, the posts may not cause all of Plaintiffs' alleged injuries; it is Defendants' publication and prominent placement of the content with Internet Search engines that comprises the extortion scheme. Further, Defendants' solicitation, publication, and distribution of defamatory materials is part of the extortionate scheme without which Defendants could not create Plaintiff's fear of economic loss for refusing to pay

Defendants' extortionate demands. In essence, Defendants use the publications on their Web site as a means for extorting money from those in a vulnerable position. It is this use that harms Plaintiffs and those similarly situated.

Therefore, Plaintiffs have come forward with evidence of RICO damages. The devastating effects of Defendants' RICO scheme on Plaintiffs' business and livelihood is described in the Declarations of Charlie Yan [DN-59], Israel Rodriguez [DN-60], Justin Lin [DN-62] filed with this Opposition, as well as the effects on two other victims, Tina Norris [DN-57] and Patricia Brast [DN-58].

### D.   Plaintiffs Have Come Forth with Evidence Sufficient to Raise a Genuine Issue of Material Fact on the Defamation Claim

The declarations of Amy Thompson, Kim Jordan and Lynda Craven state that Defendants' employees redact portions of the reports at Defendants' direction.  In addition, Defendants crete the meta-tags that cause the defamatory substance to be highlighted in Google search results. Jahnke Dec.  DN-66. The only sontent that is solicited and published so prominently is negative, not positive. See Brast Dec. DN-58. When a contributor attempts to upload a positive review, it is only posted as a "comment," not a report with the same prominence as a negative report. Id.

Such directed efforts are sufficient to raise a triable issue of fact as to whether a defendants is "responsible for" defamatory content solicited from third-parties, even under the Communications Decency Act. See Doctor's Associates, Inc. v. QIP Holder LLC, 06-cv-1710 (D. Conn. Feb. 19, 2010) (rejecting CDA defense) at 45-49, of which this Court is respectfully requested to take judicial notice and a copy of which is attached to this Memorandum of Law as Exhibit 1.

### E.   Plaintiffs Have Come Forth with Evidence Sufficient To Raise a Genuine Issue of Material Fact on their Business Torts Claims

Plaintiffs' Memorandum of Law in Opposition to Defendants' MSJ  10-cv-1360

Under <u>Korea Supply v. Lockheed Martin</u>, 29 Cal. 4th 1134, 1154 (Cal. 2003), a plaintiff seeking to show a claim for intentional or negligent interference with prospective or actual economic advantage may do so by demonstrating the conduct is "independently wrongful" as a violation of an objective legal standard, such as RICO. Plaintiffs have done so.

Plaintiffs have also submitted evidenc of specific transactions that were lost as a result of Defendants' extortionate scheme. See Declarations of Justin Lin, DN-62, Israel Rodriguez, DN-60 and Charlie Yan, DN-59.

### F.   **Plaintiffs Have Come Forth with Evidence of the Unfair Competition and Unfair Business Practices Claims**

The foregoing evidence put into the record is also sufficient to support a triable issue of fact for Plaintiffs' claims under Californai Business and Professions Codes Section 17200 et seq.  This case should proceed to trial.

### 4.   **Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment should be denied.

DATED:      June 14, 2010                    Respectfully submitted,

                                   By:   /s/  Lisa J. Borodkin
                                         DANIEL F. BLACKERT
                                         LISA J. BORODKIN
                                         Attorneys for Plaintiffs,
                                         Asia Economic Institute LLC,
                                         Raymond Mobrez, and Iliana
                                         Llaneras

Of counsel on the brief:  Kristi Jahnke

## CERTIFICATE OF SERVICE

I certify that on June 14, 2010 I electronically transmitted the attached document:

> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

to the **Clerk's Office using the CM/ECF** system for filing, and for transmittal of a **Notice of Electronic Filing, to the following CM/ECF registrants:**

David S. Gingras
**Gingras Law Office, PLLC**
4073 E. Mountain Vista Drive
Phoenix, AZ 85048
David@ripoffreport.com
David.Gingras@webmail.azbar.org
Marie Crimi Speth
mcs@jaburgwilk.com
Paul S. Berra
Paul@berra.org
Attorney for Defendants

Honorable Stephen V. Wilson
U.S. District Judge

/s/Lisa J. Borodkin